# HILLSBOROUGH.

## JULY TERM, A. D. 1858.

### HAYNES *v.* BROWN.

Evidence that the defendant was present at the organization of a company as a corporation, was elected, and acted as president, and signed the note in suit as such, is *primâ facie* proof of the existence and organization of the corporation, as in effect the admission of a party.

It would also be evidence that the party was a stockholder; the absence of the proper documentary evidence in both cases being first accounted for.

The demand upon a corporation for payment of a debt, to charge a stockholder must be personal upon a proper agent, or officer, and verbal, so that payment might be made at once. It is not enough to send to the officer by a third person, a notice in writing to pay, unless payment is expressly refused, without objection to the form of the demand.

If copies of the notes, or claims demanded, are presented, *it is not necessary to* present the originals, unless objection is made on that account.

It is not necessary that the claim against a corporation should be liquidated, in order to charge a stockholder under the first clause of the statute of 1846.

In an action of assumpsit, where the facts necessary to show a good cause in debt, are stated, but no assumpsit is alleged, the defect cannot be taken advantage of on the trial. It will be cured by a verdict.

The books of a corporation are not admissible against a member of the company, as evidence of his private contracts or dealings with the company. In respect to them, he is to be regarded as a stranger.

Such books are not evidence in any case, unless it appears that they have been kept by the proper officer of the corporation.

The Supreme Court has jurisdiction of all civil actions at common law, where the damages demanded exceed one hundred dollars. The test is the amount demanded, not the amount recovered.

IN ASSUMPSIT. The declaration contained three counts. The first alleged that on the 10th day of August, 1855, there was a corporation established by law, in the State of New-Hampshire,

called the Manchester Car and Machine Works; that said corporation was incorporated by an act of the legislature passed July 15, 1854, and had for its object a dividend of profits *among its stockholders ;* that on said 10th day of August, 1855, the defendant was, and for a long time previous thereto had been, a stockholder of said corporation; that on said 10th day of August, 1855, at said Manchester, to wit, at said Amherst, said corporation, by the name of the Manchester Car and Machine Works, by their promissory note of that date, by Hiram Brown, president, and Joseph B. Clark, treasurer of said corporation, subscribed, promised the plaintiff to pay him, or order, one hundred and ninety-eight dollars and ten cents, on demand, with interest. On said note is indorsed, April 7, 1856, received one hundred and seventy dollars. *And the plaintiff further says,* that on the 10th day of August, 1855, the whole amount of capital, fixed and limited by said Manchester Car and Machine Works, had not been and was not, nor has it since been paid in; nor has any certificate that the whole amount of capital fixed and limited as aforesaid, had been paid in; had been, or was then, or has since been, or is now, made and recorded by the clerk of said Manchester, at which place said Manchester Car and Machine Works had then, and always since, their place of business; that on the 3d day of June, 1856, the said sum of twenty-eight dollars and ten cents, and the further sum of eight dollars and twenty cents, being the interest due upon the said note from August 10, 1855, till June 3, 1856, were due; and the plaintiff then and there made a legal demand of payment of the debt aforesaid upon said Manchester Car and Machine Works; that sixty days have now long since elapsed since said demand, yet said corporation has not paid or discharged said debt, nor have the officers or stockholders of said corporation, or any of them, paid or discharged said debt, nor did said officers or stockholders, on said 3d day of June, 1856, expose, nor have they since exposed unincumbered personal property of said corporation liable to attachment, sufficient to satisfy said debt and costs, so that the same might be attached in a suit against said corporation for the security of

said debt, but refuse so to do. Whereby, according to the statute in such case made and provided, an action has accrued to the plaintiff to demand and have of the defendant said sum of twenty-eight dollars and ten cents, and also said further sum of eight dollars and twenty cents, being the interest upon the sum of one hundred and ninety-eight dollars and ten cents, from August 10, 1855, to June 3, 1856. Yet the defendants, though requested, have not paid said sums, or either of them, but refuse so to do.

The second count is in the same form to and including "*among its stockholders;*" it then proceeds, "that on the 1st day of February, 1856, the defendant was, and for a long time previous thereto had been a stockholder of said corporation; that on said 1st day of February, 1856, at Manchester aforesaid, the said corporation was indebted to the plaintiff in the sum of ninety-three dollars and fifty cents, for work, labor and services done and performed by said plaintiff, in and about the business of said corporation, at its request, and in consideration thereof promised the plaintiff to pay that sum on demand." The count then follows the first count, from the words, "and the plaintiff further says," to the end, changing merely dates and sums.

The third count follows the first to "*among its stockholders,*" and proceeds, "that on the 1st day of February, 1856, the defendant was, and for a long time prior thereto had been a stockholder of said corporation; that on said 1st day of February, 1856, at Manchester, said corporation was indebted to the plaintiff in the sum of ninety-three dollars and fifty cents, according to the account hereto annexed; and in consideration thereof said corporation promised the plaintiff to pay that sum on demand." It then follows the first count from the words, "and the plaintiff further says," to the end, changing the sum and the date of demand to "*the* 11*th day of June,*" instead of the third.

The account annexed is as follows: "Manchester Car and Machine Works, to Jonathan P. Haynes, Dr. 1856, February 1: to 46¾ days' work, $2 per day, $93.50.

The plea was the general issue *non assumpsit*. On the trial the plaintiff introduced parol evidence tending to prove that there

was a corporation called the Manchester Car and Machine Works, of which the witnesses were members, and generally attended the meetings. One of the witnesses was present when the corporation was organized, by the choice of officers, about the first of September, 1854. The defendant, at meetings of the corporation, acted as its president, and at meetings of the directors. The witnesses did not know he was a stockholder. The corporation, shortly after its organization, commenced business, making tools and so forth.

A witness, Hiram Turner, testified that he was secretary and treasurer of the corporation during the summer and fall of 1856, and no one has been since appointed. He received a number of books as books of the corporation. He could not state what they were, nor where they now are. He had no subscription book for stock; has seen a book of certificates of stock, but thinks no certificates were issued. He produced a book called a stock book. This book contains entries of two assessments on the shares, the first dated September 7, 1854, in which the defendant is assessed for 20 shares, and the assessment entered, as paid September 1, 1854; the second, paid October 13, 1854.

To the admission of this book, when offered, it was objected, that there is no entry in the hand-writing of the defendant, nor does it appear by whom any of the entries were made; that the proper evidence that the party is a stockholder is his certificate of stock.

No proof was offered of any act of incorporation, or of any meeting or proceeding of the corporation, except as aforesaid.

The evidence offered was admitted. The plaintiff produced the note described in the first count, as follows:

MANCHESTER, August 10, 1855.

For value received, the Manchester Car and Machine Works promise to pay Jonathan P. Haynes, or order, one hundred and ninety-eight dollars and nineteen cents, on demand, and interest.

Manchester Car and Machine Works.

By HIRAM BROWN, President.

JOSEPH B. CLARK, Treasurer.

And proved the signatures.

A witness proved that he was employed by the company and had charge of the iron branch of their business ; that the plaintiff was employed by him, and worked for the company pretty much all the time at two dollars a day. Another witness testified that he worked for the corporation, commencing September 7, 1855, till February 9, 1856. The plaintiff worked there while he did, and remained after he left — he cannot tell how long.

F. H. Lyford testified that he is city-clerk of Manchester, and has examined the book of returns of the stockholders of corporations in his office, and found no such return made by the Manchester Car and Machine Works.

A witness testified that he made a demand of the officers of this corporation in no other way than by serving on them a paper, of which he produced a certified copy, as follows:

" To the Manchester Car and Machine Works, a corporation established by law : We hereby demand payment of you, the said corporation, of the several debts, liabilities or demands, copies of which are hereto annexed, or that you will expose unincumbered personal property of said corporation or company, liable to attachment, so that the same may be attached in suits against said company for the security of said debts, liabilities or demands, and costs."

Here were annexed copies of numerous accounts and claims due several persons, among them the note and account of the plaintiff before stated, and the papers were signed by several persons, among others by said plaintiff, by their attorneys, Morrison, Fitch and Stanley.

The witness testified, from a certificate indorsed by him on this paper, that on the 3d of June, 1856, he served this notice on the Manchester Car and Machine Works, by giving to John P. Moore, director, Hiram Brown, president, and Hiram Turner, treasurer, an original notice, of which this is a copy.

To this evidence, when offered, the defendant objected, that the demand must be personal and verbal ; that demands of different persons cannot be joined or mixed up, and that it does not appear that any note was presented, or any account.

' But the evidence was admitted.  M. Moulton, a deputy sheriff, testified that he had a writ in his hands, which was produced, in favor of the plaintiff against the Manchester Car and Machine Works, dated June 5, 1856, returnable at the Supreme Court, September term, 1856, containing two counts, one upon the plaintiff's note before described, the other upon his account for $93.50, before stated ; that, on the 11th of June, 1856, he exhibited the writ to Hiram Brown and John P. Moore, and, on the 12th of June, Hiram Turner, as officers of the corporation, and requested them to show him personal property unincumbered, belonging to the Manchester Car and Machine Works, on which he could secure those debts and costs, which they refused and neglected to do, and he made a return on the writ, stating these facts.

The plaintiff having closed his case, the defendant moved for a nonsuit, because —

1. There is no competent evidence that there is, or ever has been, any such corporation as the Manchester Car and Machine Works.

2. There is no legal evidence of the legal organization of such corporation.

3. There is no legal evidence that the defendant is a stockholder, or that there ever were any legal stockholders, or that any amount of stock was limited or fixed by the charter or corporation.

4. It does not appear that there was any legal demand upon the officers of the corporation, or that they neglected to expose unincumbered personal property of the corporation.

5. There was no sufficient evidence of any debt but the note.

6. The note is not of sufficient amount to bring the action within the jurisdiction of the court.

7. There is no liquidation of the account, and stockholders are answerable only in case the claim is adjusted.

8. The action must be either debt or assumpsit.  This is neither.

But the court denied the motion, and a verdict was taken for

the plaintiff, under the direction of the court, which the defendant moves may be set aside, by reason of the several rulings of the court before stated ; to which exceptions were seasonably taken.

*S. N. Bell*, and *H. Foster*, for the defendant.

1. The existence of the corporation should be shown, either by an exemplified copy under the seal of the State ; *State* v. *Carr*, 5 N. H. 367 ; or by a sworn copy ; *Soc. for Prop. Gospel* v. *Young*, 2 N. H. 310 ; or by admissions of the defendant, all such proof being accompanied by proof of acts of user under the charter. A. & A. on Corp., sec. 635. The question which arises on this point is, was the evidence competent to show an admission of the existence of such a corporation ?

The evidence of the proceedings at the meetings, and the choice of officers, the meetings of the directors wherein the defendant acted as president, and the giving the note by him as president, are competent to show user of corporate powers, if the existence of the charter is first proved. A. & A. on Corp., sec. 635, and cases cited. These acts of user are the only acts shown, and, without some evidence of the existence of the corporation, are incompetent, as they are all such acts as might have been done by a partnership, or by a joint stock association not incorporated.

2. The acceptance of the charter, and a due organization of the corporation must be shown, or such facts from which it may be inferred. Of all these facts the records of the corporation are the proper evidence ; *Owings* v. *Speed*, 5 Wheat. 420 ; and to admit parol evidence thereof, it must be shown that there are no records, or that they are lost, and that due diligence has been used to procure them. *Coffin* v. *Collins*, 17 Maine, (5 Shep.) 440 ; *Haslett* v. *Wotherspoon*, 1 Strob. Eq. 209.

Turner testifies that he was clerk in 1856, and that no other has since been appointed, and that he received a number of books of the corporation, but could not state what they were nor where they now are ; but it does not appear that he made any

search or examination to ascertain whether they contained the records of the corporation, nor what had become of them since they came into his possession; and to admit parol evidence of the existence of the corporation, acceptance of its charter or its organization, it should have appeared that there were no records, or their loss should have been shown, and that on due search they could not be found. 1 Greenl. Ev., sec. 558, and cases cited; 4 Phil. Ev., Cow. & Hill's Notes, 441; *Jackson* v. *Hasbrouk*, 12 Johns. 192; *Jackson* v. *Frier*, 16 Johns. 193, etc.

The meetings of the corporation will be deemed regular, and the corporation duly organized, after a lapse of time, or from a continued exercise of corporate powers, which pre-supposes their existence; but this presumption does not arise when the proceedings are recent. *Soc. for Prop. Gospel* v. *Young*, 2 N. H. 313; *State* v. *Carr*, 5 N. H. 371; *Gray* v. *Gardiner*, 3 Mass. 399; *Williams* v. *Amory*, 14 Mass. 20; *Pejepscot Proprietors* v. *Ransom*, 14 Mass. 147; *Blossom* v. *Cannon*, 14 Mass. 177; *Colman* v. *Anderson*, 10 Mass. 113; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102; *Middlesex Husbandmen* v. *Davis*, 3 Met. 133; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 71, (7 Curtis, Dec. 19.) In this case the proceedings are all of a very recent date, and no such presumption arises.

3. Was this defendant a stockholder? The acts of the defendant at meetings, and his holding the office of president do not tend to show him to be a stockholder. He might well do all these acts, be both president and director, and act as such, without being a stockholder, unless some provision of the charter requires the officers to be stockholders, which would not of necessity be presumed, and is not shown. He is not even shown to have been one of the grantees, nor to have been admitted as an associate, nor to have ever bought or owned any stock. Even if the acts proved had a tendency to show the defendant a stockholder, the books of the corporation are the best evidence, and their absence or loss must be shown before parol evidence or secondary evidence of his acts is admissible. *Coffin* v. *Collins*, Shep. 440; *Downing* v. *Potts*, 3 Zabr. 66; *Ellis* v. *Marshall*, 2 Mass. 269, and cases cited *supra.*

It does not appear that the clerk was required to produce the records of the corporation, or that he made any search to ascertain if there was any record of the stockholders.

Does the stock-book produced by the treasurer of the corporation, or the entries therein of payments of assessments, show that the defendant was a stockholder, or is it admissible as evidence for that purpose? The books of a corporation cannot be adduced as evidence in support of its own rights or privileges against strangers. 1 Phil. Ev. 122. In this case the defendant, unless shown previously to be a stockholder, is, as to any act of the corporation or its records, or entries in its books, to which his assent is not shown, but a stranger. The entries are not made by his assent, and over them he has no control; and as to this suit they are entries made by the corporation in its own favor, and stand on the same ground as entries in the books of an individual in his own favor. The general rule is that corporation books are evidence in disputes between members, but not between strangers. 1 Phil. Ev. 122, (note 109, Cowen & Hill's Notes, vol. 4, p. 263) and cases cited; Brett v. Beales, 1 M. & M. 416, (22 Eng. Com. Law 553.)

It must be shown that the book produced is the book of the corporation, and that it was kept and the entries made by the proper officer. Highland Turnpike Co. v. McKean, 10 Johns. 154; Gaines v. Tombeckbee Bank, 1 Ala. 50. It is not enough that the book is in the hand-writing of the person stated therein to be secretary, and that the witness received it from such person; Highland Turnpike Co., supra; nor merely that the book is proved by a former secretary to have been handed down to him as a corporation book. Martin v. Gunby, 2 Harr. & Johns. 248. In Philadelphia Bank v. Officer, 12 Serg. & Rawle 49, it was held that the entries in a book of an incorporated bank were not admissible, as between third persons, to show a deposit of money, unless it were first proved that the clerk who made the entries was dead, or beyond the reach of process, and this though it was admitted that the entries were made by one who was clerk at the time. In Ridgeway v. Farmers' Bank, 12

Serg. & Rawle 256, it is said, in relation to books of private corporations, as banks and insurance companies, they should not be admitted without proof by whom the entries were made. The books of an incorporated bank are not admissible against any other than the bank, without proof by whom the entries were made; and the proper witness to make such proof is the clerk who made them, if within the jurisdiction, and if dead or out of the jurisdiction, proof of his hand-writing. *Goehenauer* v. *Good*, 3 Penn. 274. Such entries made in the books of a corporation are in fact no more than minutes made by a party in his own memorandum book, and are in fact making evidence for himself. The case would have been different if the entry were of a public nature. *Marriage* v. *Lawrence*, 3 B. & A. 142, (5 Eng. Com. Law 91;) *Mayor of London* v. *Mayor of Lynn*, 1 H. Bl. 215, note; *Jackson* v. *Walsh*, 3 Johns. 226; *Highland Turnpike Co.* v. *McKean*, 10 Johns. 154; *Haven* v. *N. H. Asylum*, 13 N. H. 534. Even in elections of officers of incorporated companies, the stock-ledger is not evidence of being a stock-holder, unless substantiated and supported by the other books. In case of dispute, the transfer-book must control the rest. *Downing* v. *Potts*, 3 Zabr. 66. In this case, the book introduced, called the stock-book, does not appear to be the records of the corporation, and the entries therein not matter proper to be recorded, even if it were the proper book of records, as neither the assessments nor the payment of them, by the charter or the nature of the business of the corporation, are required to be recorded; the entries appear to be memoranda made by some person in the books of the corporation, but by whom does not appear, nor for what purpose. They are not even authenticated as made by any officer of the corporation, neither does it appear but that the person who made them might have been produced.

4. When an action depends on the right of a corporation to make a promissory note, it must affirmatively appear that it was made in the course of its legitimate business, and the fact will not be presumed; and proof that a promissory note, purporting to be made by a president and secretary of a corporation, is not

sufficient, without proof of their authority to sign.  *McCullock* v. *Moss*, 5 Denio 567.

If the signature to a promissory note is made by an agent, his authority, as well as his hand-writing, must be proved.  5 Phil. Ev. 9 ; 2 Kent's Com. 798 ; A. & A. Corp., sec. 283 ; *Haven* v. *N. H. Asylum*, 13 N. H. 532 ; *Thurman* v. *Wells*, 18 Barb. 500 ; *Swearingen* v. *Knox*, 10 Miss. 31 ; *Reading R. R.* v. *Johnson*, 7 Watts & Serg. 317 ; *Flax and Hemp Co.* v. *Ballentine*, 1 Harr. 454 ; *Dixon* v. *Hastell*, 3 Brevard 475 ; *Irvine* v. *Buckaloe*, 12 S. & R. 35.

5. The amount of capital limited and fixed by the corporation should be shown.   The evidence of this would appear either by the charter or the records of the corporation ; and some evidence of this fact should be offered, either by the charter or records, or else the absence of such evidence should be accounted for, and secondary evidence might be admissible ; and though in such case the evidence required might be slight, yet some must be shown.   This fact is one of the elements on which the liability of the individual stockholder depends.   No such evidence is offered.   The corporation are also required to file a certificate of the amount of capital stock fixed and limited by the corporation, which is to be recorded by the clerk of the town where such corporation has its place of business ; Comp. Stat., ch. 147, sec. 1 ; and until that is done the stockholders are individually liable for the debts of the corporation.   The fact that such certificate is filed is a matter of affirmative proof, and to be determined by examination of the records of the town-clerk, and there should be some evidence offered tending to show that due search had been made, and that no such certificate could be found.

The corporation are required also to deliver to the town-clerk a list of the names and residences of its stockholders, and this the town-clerk is required to record.   Comp. Stat., ch. 147, secs. 8 and 9.   These two provisions are different from each other, and subject the corporation and its stockholders to different liabilities.   The neglect to make return of its stockholders, &c., imposes no new liability on the stockholders.   It is a matter for

which the legislature might cause the charter to be forfeited, but it cannot be inquired into collaterally. A. & A. Corp., sec. 777, and numerous cases cited. The other is a requirement without which the stockholders are individually liable for the debts of the corporation, and is one of the conditions on which such liability depends. It appears by the testimony of the city-clerk of Manchester that he had made an examination of the book of returns of stockholders in his office, and found none of this corporation; but it does not appear that he made any examination to see if a certificate of the amount of capital fixed and limited by such corporation, had been made and recorded by the city-clerk of Manchester. His office was the proper place to find the record of such certificate, and search should have been made there, and if not recorded, evidence that it could not be found should have been offered, to fix the liability of the stockholders. Comp. Stat., ch. 149, sec. 7.

The liability of a stockholder is not a debt, but a limited liability, to be enforced in a particular manner. *Kellon* v. *Phillips*, 3 Met. 63.

6. The demand for the payment of the plaintiff's claim was entirely insufficient. To make an effectual demand, it is necessary that the person making the demand should make known the ground on which he claims, and the right he has to make the demand, and he should be in a position that, if a doubt is raised as to his authority, he may be able to satisfy that doubt. A demand for such a purpose must necessarily be personal. It must be such that the person on whom the demand is made may satisfy the demand and discharge himself by complying therewith on the spot. The person making the demand should have due authority, and the claims, payment of which is demanded, should be in his possession, and should be exhibited. *Phelps* v. *Gilchrist*, 28 N. H. (8 Foster) 266; Byles on Bills 158, note; *Freeman* v. *Boynton*, 7 Mass. 483; *Draper* v. *Clemens*, 4 Miss. 52; *Bank of Vergennes* v. *Cameron*, 7 Barb. Sp. Ct. 143; *Whitwell* v. *Johnson*, 17 Mass. 449; *Gilbert* v. *Dennis*, 3 Met. 495; Chitty on Bills 369, &c.

In this case, the note and the claim demanded should have been exhibited, so that the corporation or its officers might have satisfied the claim. This paper was served by giving certain officers of the corporation a copy thereof; but it does not appear that the person making the demand had any authority to receive the pay, or that he had the claims in his possession, so that he could discharge them on payment being made. Indeed, the contrary appears, for the paper was signed by several persons, requiring the payment to be made to them. Neither is it shown that the persons on whom the paper was served had any knowledge of its contents, or that the demand was brought to their notice. Neither does it appear where this service was made on these persons. By the provisions of the statutes, this demand was to be made on the company, (Comp. Stat., ch. 147, sec. 4,) and it is alleged that the corporation had its place of business in Manchester, but no evidence was offered that the place of business was in the county of Hillsborough, or any where else in the State of New-Hampshire. But it is not shown that the demand was made either at Manchester or at the place of business of the corporation, or of its proper officers there; since it could not be presumed that the officers of the corporation would have the funds of the corporation, or its books and papers at their individual command, so that they might satisfy a claim against the corporation, wherever they might chance to be. *Phelps* v. *Gilchrist*, 28 N. H. (8 Foster) 266. The same rule applies generally in regard to the demand for the payment of a note or the acceptance of a bill, that it must be personal and verbal, and that the person making the demand must have the note in his possession, ready to be delivered up when presentment for payment is made. Story on Prom. Notes, sec. 243, and cases cited; Byles on Bills 157; Story on Bills, sec. 364; Chitty on Bills 369, and cases cited. If the note is lost, presentation of a copy is not sufficient. *Freeman* v. *Boynton*, 7 Mass. 483. A notice by a letter sent through the post-office will not be sufficient. *Stucker t* v. *Anderson*, 3 Wharton 116; 2 *Magruder* v. *Bank of Washington*, 9 Wheat. 598. And the demand must be made to the

maker personally, or at his dwelling-house or place of business. As a demand cannot be made on a corporation personally, it should be made at its place of business, for they are bound to have some one there to respond to claims against the corporation. Story on Prom. Notes, sec. 335 ; Byles on Bills 157; Story on Bills, sec. 362, and Chitty on Bills 367. The same rule as to personal and verbal demand prevails in regard to demand for rent, or where the operation of the demand would be to work a forfeiture. *Jones* v. *Reed,* 15 N. H. 68; *Jackson* v. *Harrison,* 17 Johns. 70; *Remsen* v. *Conklin,* 18 Johns. 450; Co. Litt. 202, a.; *Conner* v. *Bradley,* 1 How. 211; *Chandless* v. *Robson,* 2 Carr. & Payne 245; *Wheeldon* v. *Paul,* 3 C. & P. 613; *McQueston* v. *Morgan,* 34 N. H. 400. The claims of several persons should not have been joined together in one demand, for the corporation might properly refuse to pay the claim of one individual, and still be ready to pay the others; and the liability of the stockholders to pay a claim attaches only in case of a refusal to pay that claim, and not by the refusal to pay a debt due some other person.

In a demand such as was made here, the corporation had no option. They could not make a distinction between the different claims. The several persons who signed the paper, making the demand, did not each make a demand of the amount due himself, but made a demand of the whole of the several debts, or else a joint demand of all the several claims; and there appears no authority on the part of any one of the claimants to receive the whole amount claimed to be due on the several demands, and no authority on the part of them all, jointly, to receive the amount due the individuals; and they could not make a joint demand unless there was some joint interest; nor does it appear that the person who served the notice had any authority to receive the whole or any part of the demands; neither that the several persons who signed the original notice claimed that there was any thing due them on the claims presented. The demand was not made in such a manner that the corporation could safely pay any one of the claims. See authorities cited *supra.*

The same objections apply with equal force to the demand to expose unincumbered property for attachment, and that stands on the same ground. The demand to expose property made by Moulton was insufficient for the same reasons, and for the further reason that the demand must be for the payment; (Comp. Stat., ch. 147, sec. 4;) in which case the corporation may discharge the debt or expose property for attachment. Moulton made no demand for the payment, only a demand to expose property. On such a demand no liability attaches to the individual stockholders.

There has been no neglect to expose property, &c., for the reason that no sufficient demand of payment has been made, and until a proper demand is made the individual stockholder is not liable.

The demand by Moulton was, " to show him personal property, unincumbered, belonging to the Manchester Car and Machine Works, on which he could secure those debts and costs." He should have made a demand to expose personal property, unincumbered, liable to attachment. The statute imposes a liability only on a neglect to expose a particular description of property, and a demand to expose some other description of property would be insufficient.

7. It should have appeared that the object of the corporation was a dividend of profits among its stockholders. No charter is shown; no proceedings of the corporation indicating the business of the corporation. The acts which the testimony shows to be done by the corporation, might all equally as well have been done by a corporation whose object was not a dividend of profits, and the facts should appear, either by the charter, the proceedings, or votes of the corporation; or by such acts and conduct of business as give at least a presumption of such being its object. Without such evidence there can be no recovery against the individual stockholders.

The liability of stockholders attaches only in cases of corporations having for their object a dividend of profits among their stockholders, incorporated after the passage of the act, or whose

charters are subject by law to alteration, amendment or repeal. Comp. Stat., chap. 147, sec. 1. No evidence is offered that shows the date of incorporation, nor whether before or after the passage of the acts, nor any evidence that the charter of the corporation, if any existed, was by law subject to alteration, amendment or repeal, nor that the charter was one granted by the legislature of this State. If it be not shown to be a corporation, included in these descriptions, no liability attaches to the stockholders individually.

By sec. 4., chap. 147, Comp. Stat., when the corporation neglects to pay its debts, on demand made on the officers of the corporation, as provided in that section, it is made the duty of the officers to call a meeting of the stockholders, to provide means of payment within sixty days, and if the debt is not discharged within that time a suit may be maintained.

The stockholders are not liable unless such a meeting is called, for until that time they cannot have knowledge of the existence of the claim, nor of the neglect of payment, and cannot provide means of payment, nor expose property of the corporation for attachment.

The same statute provides that upon such demand being made, if the officers or stockholders shall discharge the debt or liability, no suit shall be maintained; and it provides the mode by which the stockholders are to obtain knowledge of the debt, and discharge themselves from individual liability, either by providing means of payment, or exposing the property of the corporation to attachment; and there should be some evidence offered that such meeting was not called, or, if called, that the stockholders neglected to provide means of payment, in order to render the stockholders individually liable.

BELL, J. On the motion for a nonsuit the question arises whether competent evidence was presented to the jury, on which they could be justified in finding a verdict for the plaintiff.

1. Was there competent evidence of the existence of the corporation, as alleged?

" The existence of a corporation, incorporated by private act, may be shown, either by an exemplified copy of an act, authenticated by affixing thereto the seal of the State, without other proof; by a sworn copy of the same, or by admission ; all such proof being accompanied by proof of acts of user under the act or charter." Ang. & Am. Corp. 572 ; *State* v. *Carr*, 5 N. H. 367, and cases cited ; 1 Greenl. Ev., sec. 480.

Where the corporation was a domestic corporation, the printed statute book, as printed by the printer to the State, has been admitted as evidence of the act of incorporation. Ib. ; *Wood* v. *Jefferson Co. Bank*, 9 Cowen 205 ; *Anon.*, 2 Salk. 566.

In the case of *New-Boston* v. *Dunbarton*, 12 N. H. 409, and 15 N. H. 201, and in *Bow* v. *Allenstown*, 34 N. H. 351, it was held that in a case where no charter or act of incorporation could be found, a charter may be presumed from the long continued exercise of corporate powers without objection ; and in the last case, that a grant of corporate powers may be implied, where otherwise the manifest purpose of any legislative act would be defeated.

In this case no sworn or authenticated copy of any act of incorporation was produced, and no copy in the authorized printed statutes was shown, and no evidence of loss, or secondary proof was offered.

The courts will not *ex officio* take notice of private acts. They must be proved. 1 Ch. Pl. 218 ; 1 Greenl. Ev., sec. 480. They will not be noticed unless given in evidence. *Griswold* v. *Kemp*, 1 C. & M. 635.

Though the acts of user were sufficient, if a charter had been shown, there was no competent evidence of an act of incorporation, and there was consequently a failure to prove the existence of the corporation in the ordinary mode.

But besides the proof of a corporation by the two steps of showing a charter and the action of the grantees under it, or a user of the franchise, evidence may be offered which goes to the fact of the existence of the corporation without reference to these successive steps. Such is the admission of the existence of the

corporation by the party against whom the evidence is offered, either by his express declarations, or by his acts, necessarily, or by fair construction and inference, implying the fact. Ang. & Am. Corp. 574; *Congregational Society* v. *Perry*, 6 N. H. 164.

No declarations of the defendant were shown. But it was proved by one witness that he was present when the corporation was organized by the choice of officers, and that the defendant, at meetings of the corporation, and at meetings of the directors, acted as its president, and that shortly after its organization the corporation commenced business. Another witness testified that he was secretary and treasurer of the corporation, and that he received a number of books as books of the corporation, of which he produced one, which purported to be a stock-book, and he said he had a book of certificates of stock, though he thinks no certificates were issued. The note produced is signed the Manchester Car and Machine Works, by Hiram Brown, (the defendant) president.

These circumstances, very meagre indeed compared with the evidence which might be supposed to exist, seem to us to have a strong tendency to show an admission by the defendant of the fact that there was a corporation duly constituted and organized by the name of the Manchester Car and Machine Works, on which, as against him, the jury would have the right to regard that fact as proved.

It is for them and not for the court to judge of its weight. The absence of other evidence of the organization and acts of this corporation, or company, is somewhat explained and accounted for by the testimony of the secretary and treasurer, who says he had the books, but has them not at this time, nor any knowledge where they are.

2. It is wholly immaterial in this case, whether a corporation has been legally organized or not, or whether it has complied with the requirements of the charter, or laws, or not. That is a matter to be settled in a suit between the government which created the corporation and the corporators, and not collaterally,

Haynes *v.* Brown.

in any action between third persons and either the corporation or the corporators. *State* v. *Carr*, 5 N. H. 371; Ang. & Am. Corp. 575, and many cases cited.

3. The proper and usual evidence that a party plaintiff is a stockholder of a corporation, is the production and proof of his certificate, which is in his own custody and control, but the evidence of the same fact by a stranger must ordinarily be derived from the books of the corporation, which are evidence in the nature of public records, as to every body, of the corporate proceedings. The absence of these records was sufficiently accounted for to make parol evidence of the same matters admissible. The evidence tended to show that the defendant was a stockholder. His attendance at the meetings, and acting as the president, was competent proof for this purpose. If he was not a stockholder, it would be an answer to the action, and it was in the defendant's power readily to show it; if he offers no evidence, a jury would be warranted to infer from these circumstances that he was a stockholder. In *Chesley* v. *Pierce*, 32 N. H. 402, the court declined to decide that either a certificate or payment was essential to constitute a stockholder. If a party, with the assent of the grantees or of the corporation, has assumed the position and duties of a stockholder, he may be held to the responsibilities of one, without either payment or a certificate. The evidence has a tendency to prove that there were other stockholders. If so *de facto*, it is not material that they were legally such.

It might be of consequence, in a suit for assessments, to show that some amount of stock was limited and fixed by the charter, or the corporation. *Littleton Mg. Co.* v. *Parker*, 14 N. H. 543 ; *Central R. R.* v. *Johnson*, 30 N. H. (10 Foster) 390.

But in an action against the individual stockholder to charge him personally, because the corporation have failed to perform their duties, this seems immaterial. The stockholder is made, by the statute, " jointly and severally liable for all debts, &c., of the corporation, until the whole amount of the capital fixed and limited by such corporation shall have been paid in, and a certificate

thereof shall have been made and recorded," &c. (Laws of 1846, chap. 321, sec. 2 ; Comp. Stat., 312.) Until such amount is fixed, the condition on which the stockholders are exonerated from individual liability cannot be performed.

4. " No suit against any stockholder, for the collection of any such debt or liability, shall be commenced until after a legal demand of payment thereof shall have been made upon the company ; and upon such demand being made, if the officers and stockholders of such company shall discharge such debt or liability, or expose unincumbered personal property of such company, liable to attachment, and sufficient, &c., then no such suit shall be sustained against the stockholders." Rev. Stat., chap. 146, sec. 3.   Objection is made that there was no such legal demand.   The case shows that a written demand was served on the defendant, as president, and on others, as director and treasurer, by leaving with each an original of which a paper returned is a copy.   In the case of *Phelps* v. *Gilchrist*, 28 N. H. (8 Foster) 277, the Superior Court had occasion to consider the sufficiency of such a demand to charge a man with breach of contract, or a conversion of property, and it was held that such a demand as the law requires must be personal and verbal, though it may be judicious, to prevent controversy, to make such demand in the terms of a written paper, and to give the party a copy.   It is a call by a person authorized to receive the property demanded, for its delivery made upon the person, who is then bound to make such delivery.   It must be such that the person called upon may at once discharge himself, by giving up the property, in this case by paying the debt.   *Edwards* v. *Yeates*, R. & M. 360.   The paper left with the defendant and other officers of the Car Works was signed by the plaintiff's attorneys, but it was left by another person.   There was, consequently, no opportunity to make the payment, if there had been a disposition to do it.   The evidence, then, of a demand was insufficient.

If the defendant or others had made no objection to the manner of the demand, and had distinctly refused to pay, it would be a waiver of any objection on this account.   It does not appear

that they were aware of the contents or objects of the paper until the messenger had gone.

It was objected that the claims of several persons cannot be joined in the same demand, but there does not seem to be any ground for this objection. The note and account of the plaintiff were not exhibited, and it is said the demand was insufficient on that account, but copies of both were set out in the written demand. If a verbal demand had been made in the terms of that writing, by a person authorized to receive payment, it would seem to be sufficient, unless the papers were called for, or, objection made on that account.

The demand made by the officer upon the writ was not a compliance with the requirement of the statute, which forbids a suit against the stockholders until after a legal demand of payment. Here the demand was not one of payment. The writ was shown, and the officers were requested to show property to be attached, and nothing more. The evidence offered was not competent to show a demand of payment, and it should not have been admitted. The want of such evidence was good cause of nonsuit.

5. Two witnesses testified to the services charged in the plaintiff's account. One of them testifies he had charge of one branch of the company's business, and in that capacity employed the plaintiff, and both state something of the time he was employed. This evidence was competent; it was for the jury to decide whether it was sufficient to prove the whole, or any part of the claim.

6. The Supreme Judicial Court has concurrent jurisdiction, with the Court of Common Pleas, of all civil actions at common law, where more than one hundred dollars shall be claimed in damages. Stat. 1855, ch. 1659, sec. 8, p. 1541. The jurisdiction depends on the amount of the damages demanded, and not on the amount recovered. The plaintiff cannot recover costs by section 6, unless he had a reasonable expectation of recovering more than one hundred dollars; but the jurisdiction is not affected, however small the amount recovered.

7. It is claimed that stockholders are answerable only in cases

where the claim is liquidated or adjusted. The whole personal liability is created by the statute, and must be governed by its provisions ; and we find nothing which restricts the liability to liquidated claims. By the second section of the statute of 1846 it is provided that the stockholders and officers [of corporations] shall be personally liable for the debts and *civil liabilities* of such corporations, in the following cases, &c. ; and by the first subsection, they shall jointly and severally be liable for all *debts* and *contracts* of such corporation, &c. By section 2 of chapter 146 of the Revised Statutes, " proper actions of debt or assumpsit, for the collection of such debts or liabilities, may be commenced and prosecuted against any one or more of said stockholders, &c. ; and in the 3d, 4th and 5th sections of the same chapter the provisions apply to *debts* and *liabilities ;* and in the 4th section of the statute of 1846 the language is *debts* and *civil liabilities ;* while in the second to the seventh subsections of the first section of the statute of 1846, the liability is confined to *debts* of the corporation. The present case falls under the first subsection of the statute of 1846, which is not confined to *debts,* but applies to *debts* and *contracts.:* and we think it cannot be restricted to debts, or liquidated claims.

8. It is objected that the action should be either debt or assumpsit, and this is neither. The defendant is required to answer in a plea of the case, and the facts supposed to be necessary to bring the case within the provisions of the statute are set out, and it is then alleged that an action accrued to the plaintiff to recover of the stockholder, &c., but no promise is stated. This is a sufficient declaration in debt, but is insufficient in assumpsit, upon a demurrer ; but defects in a declaration cannot be taken advantage of on motion for a nonsuit, and the defect would be cured by a verdict, as being but a defective statement of a good cause of action.

9. A book called a stock-book was put in evidence, which was objected to, because the entries were not made by the defendant, and it does not appear by whom they were made. It contained entries of assessments and of the payment of them.

Haynes *v.* Brown.

The records of a corporation are evidence in some cases and for some purposes. The rule generally laid down in the elementary books is, that " the books of a corporation, whether containing entries of a public or private nature, are admissible in evidence as between themselves, but not against a stranger." 2 Saund. P. & E. 748; Ang. & Am. Corp. 607; 2 Phil. Ev. 122.

The present case is not one where the parties are members of the same corporation, and it is therefore unnecessary to inquire whether the rule is not laid down more broadly, or with fewer qualifications, than it ought to be.

There is no question that the records of a corporation are evidence of the proceedings of the corporation itself. 1 Greenl. Ev. 542, sec. 493; *Turnpike* v. *McKean*, 10 Johns. 154; Ang. & Am. Corp. 471;·*Wood* v. *Jefferson Co. Bank*, 9 Cowen 194, 205; *Case of Thetford*, 12 Vin. Ab. 90, Pl. 16; *Arvings* v. *Speed*, 5 Wheat. 424; *Smith* v. *Steamboat Co.*, 1 Haw. Miss. 479; *Whitman* v. *Granite Church*, 11 Shep. 236; *Coffin* v. *Collins*, 5 Shep. 440; *People* v. *Oakland Co. Bank*, 1 Doug. 282; as of its organization; *Duke* v. *Navigation Co.*, 10 Ala. 82; *Hall* v. *Cary*, 5 Ga. 237; *McFarland* v. *Ins. Co.*, 4 Denio 392; cases cited in Ang. & Am. Corp. 471. Of its meetings and the election of its officers and members; *Gibbon's Case*, 17 Haw. St. Trials 810, 814; and of the votes and acts of the corporation and of its officers, where those acts and votes are required, either by the charter or by-laws, to be recorded; or where they are in fact transacted at meetings of those officers, at which there is a clerk to keep the records.

To render these books admissible for these purposes, the party who introduces them must show that they are the books of the corporation, independently of what appears upon the books themselves. *Whitman* v. *Granite Church*, 11 Shep. 236: that they have been regularly kept by the clerk, or other proper officers. 12 Vin. Ab. 90, Pl. 16; *Turnpike Co.* v. *M'Kean*, 10 Johns. 154; *Rex* v. *Motherwell*, 1 Stra. 93; Phill. Ev. (1 Am. Ed.) 319; and if there is any thing suspicious in their appearance, or if any doubt is cast upon them by the testimony,

that they were made at the times they purport to have been, and have not been made up subsequently, to answer some purpose of the corporation, or others.

But the entries in the books of a corporation relating to other matters of fact than the proceedings of the corporation, are not evidence in their favor, in a controversy between them and any stranger, nor between them and a member of the corporation, holding or claiming adversely to them. 2 Saund. & E. 748; Ang. & Am. Corp. 607; 1 Greenl. Ev. 542. Neither are they evidence against a member of the corporation, of his contracts or private dealings with the company. In that respect he is to be regarded as a stranger. 1 Phill. Ev. 358; *Hill* v. *Manchester Water Works Co.*, 2 N. & M. 573; 2 B. & A. 545.

This principle was recognized in the case of *Marriage* v. *Lawrence*, 3 B. & A. 142; in *Brett* v. *Beales*, 1 M. & M. 350; *Mayor of London* v. *Mayor of Lynn*, 1 H. B. 214, note c; *Jerman* v. *Worth*, 5 Denio 342; 1 Phill. Ev. 151, Am. Ed. 319.

As the books of a corporation are not evidence, as between the corporation and a member or a stranger, as to their business transactions, it follows *a fortiori* that they cannot be so as between a member and a stranger, or between two strangers; and the cases of *Brett* v. *Beales*, *Jackson* v. *Walsh* and *Jerman* v. *Worth*, before cited, are direct authorities to this point.

There are, then, two capital and fatal objections to the stockbook as evidence; first, it does not appear that the entries are made or the books kept by any proper officer of the corporation; and second, they are not properly records of the corporate action of the company, or its officers, but merely accounts of their private pecuniary transactions, which are merely the written statements of some person about their dealings, and mere hearsay. The person who made them may be found and put on the stand. This evidence, then, was improperly admitted.

For this and other causes, before stated, the verdict must be set aside, and a

*New trial granted.*